**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROMUALD TYBURSKI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 CV 9228 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| CITY OF CHICAGO, | ) | |
| | ) | Magistrate Judge Sheila Finnegan |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Defendant City of Chicago (the "City"), by its attorney, Edward N. Siskel, Corporation Counsel of the City of Chicago, respectfully submits the following Memorandum of Law in Support of its Motion for Summary Judgment.

## INTRODUCTION

Plaintiff Romuald Tyburski ("Plaintiff") was hired by the City when he was 53 years old. Plaintiff sues under the Age Discrimination in Employment Act ("ADEA"), based on three EEOC Charges. In his Charges, dated April 24, July 2, and August 19, 2015, Plaintiff mainly alleges he was not promoted to Assistant Chief Operating Engineer ("ACOE") in 2014, and was harassed based on age and in retaliation for age complaints at Central Park pumping station from 2013-2015. *After* filing his Charges, Plaintiff swung a wrench in anger during an altercation with another employee, and was assigned to a new station. He claims the subsequent discipline was harassment and retaliation, and the new job assignment was age harassment.

Plaintiff does not raise triable issues of fact. The undisputed evidence shows he was not promoted to ACOE because he failed Part 3 of the ACOE exam, which was administered evenly to all applicants. His harassment claim consists of scattered comments focusing on performance,

not age. Finally, even if the post-EEOC Charge events are properly at issue, Plaintiff offers no evidence his discipline and reassignment after swinging a wrench was pretext for discrimination.

## SUMMARY OF FACTS

### A.  Plaintiff's Hiring, Promotion to Group A Engineer

Plaintiff was hired by the City on October 1, 1993 as an Operating Engineer – Group C ("Group C Engineer"), and worked for its Department of Water Management ("DWM") since June 1, 2001. Defendant's Statement of Undisputed Facts ("SOF") at ¶1. Plaintiff's year of birth is 1939 and he was 53 when the City hired him. *Id.* In 2013, the City posted a bid opportunity for Operating Engineer – Group A ("Group A engineer"). SOF ¶5. The process included a written exam and verbal interview, and Chief Operating Engineer James McCarthy helped administer the verbal interview. SOF ¶6. Plaintiff applied, passed, and was promoted at the age of 74. SOF ¶6. After becoming a Group A Engineer, Plaintiff was assigned to Central Park pumping station ("Central Park") in September 2013. SOF ¶20.

### B.  The 2014 Assistant Chief Operating Engineer exam

In 2014, only one year later, the City posted a bid opportunity for Assistant Chief Operating Engineer ("ACOE") ("the ACOE exam"). SOF ¶7. The process included a 2-part written exam, and a verbal exam. SOF ¶8. Applicants had to pass all three parts to be eligible. SOF ¶8. Thirty-five people took the ACOE exam. SOF ¶9. Six failed the written exam or were no-shows. *Id.* The other 29 people, including Plaintiff, took the verbal exam ("Part 3"). SOF ¶15[1]. Chief Operating Engineers James McCarthy and Maurice Walsh conducted the verbal exam; Plaintiff did not know either man, and neither knew him. SOF ¶11. All applicants were asked the same questions. SOF ¶14.

---

[1] Later, one more applicant, Bryant Simpson, took and passed the exam due to an arbitration. SOF ¶10.

Of the applicants who took Part 3, Plaintiff had the second-lowest score (42%), well below the 60% cutoff to be "qualified" for ACOE. SOF ¶15. Sixteen of 30 applicants failed Part 3. *Id.* The others passed, and were qualified. SOF ¶15-16. Thirteen were promoted to ACOE, and one, John Renardo, declined the position. *Id.* No one was promoted to ACOE unless they passed Part 3. *Id.* Seven of the 13 promoted were over 40, as was Renardo. SOF ¶17.

### C. Alleged harassment at Central Park

Plaintiff alleges he was harassed based on age at Central Park from September 2013 to September 2015 by Group C Engineers Carl Sanderson ("Sanderson") and Jeff Worden ("Worden"), Group A Engineer Brian Sumner ("Sumner"), and at the end by ACOE Brandon Mecher ("Mecher"). SOF ¶¶23-24.

### 1. Alleged Age Harassment By Brian Sumner

Prior to Central Park, Plaintiff worked with Sumner at Springfield station without issues. SOF ¶26. At Central Park, Sumner and Plaintiff were Group A Engineers, though Sumner sometimes "acted up[2]" as ACOE on some shifts when Mecher was not working. SOF ¶25. Plaintiff admits he did not spend much time with Sumner on any given shift. SOF ¶27. Plaintiff claims Sumner made comments referring to his age and his qualifications, probably as often as once a week while he was at Central Park. SOF ¶28. Plaintiff alleges Sumner sometimes said he was too old, or "people your age should not be working as operating engineers or promoted." SOF ¶29. Otherwise, "it would just be demeaning remarks," that "I don't know what I'm doing." SOF ¶30.

Plaintiff verbally complained about Sumner a couple times in 2013-14 to acting Chief Operating Engineer Andre Holland ("Holland"). SOF ¶32. When he did, things got better for a

---

[2] Acting up is performing the duties of a different job title for a shift if no one in the title is available.

week or two. SOF ¶33. According to Plaintiff, Holland also told him Sumner was relegated to Group C engineer on their shifts, so Sumner would actually take orders from Plaintiff. *Id.*

On June 1, 2015, Plaintiff had an altercation with Sumner over closing a valve. SOF ¶34. Sumner told him "you don't know what the f**k you doing," and moved him out of his position. *Id.* Age was not discussed that day; nor was Sumner Plaintiff's supervisor. SOF ¶¶34-35.

### 2. Alleged age harassment by Carl Sanderson and Jeff Worden

Plaintiff claims Sanderson, his subordinate, made up to five age-related comments. SOF ¶36-39. The two interacted daily, and generally had a good relationship. SOF ¶37. Sanderson made two comments in late 2014 or early 2015, to the effect of "Roman, you are old and you piece of shit." SOF ¶38. Sanderson did not seem angry, but Plaintiff took it as an insult. *Id.*

Plaintiff alleges Worden, also his subordinate, mentioned his age about three or four times in as many years. SOF ¶¶40-41. In 2012, Worden ran laps at lunch, and said "Roman, you too old. You cannot keep up with me," but Plaintiff lapped him. SOF ¶42. In 2015, Plaintiff told Worden his charts were sloppy, and Worden said Plaintiff was f**king old and did not know what he was doing. SOF ¶43.

### 3. Alleged age harassment by Brandon Mecher

Mecher was promoted to ACOE in March 2015, and was assigned to Central Park. SOF ¶44. Plaintiff admits Mecher never commented on his age. SOF ¶¶45-46. Rather, Mecher criticized Plaintiff's performance, and Plaintiff interpreted the criticism as being about age. *Id.* Mecher also directed Plaintiff to conduct boiler water tests a few times in 2015 and Plaintiff interpreted this to mean Mecher thought Plaintiff was too old and did not know how to do it. SOF ¶47. Finally, in August 2015, Mecher ordered Plaintiff to wash the garage floor. SOF ¶50. Plaintiff refused because he felt this was improper as he did not park his car there. *Id.* Plaintiff

4

had cleaned the boiler room multiple times; the only time he took issue with cleaning was the garage floor. SOF ¶51.

### D. The wrench incident with Mecher, Plaintiff's assignment and suspension

On September 8, 2015, Mecher asked Plaintiff how long he had worked at Central Park, stated he knew more than Plaintiff after a few months, and that Plaintiff was stupid and did not know what he was doing. SOF ¶55. Mecher was about two feet from Plaintiff. SOF ¶56. Plaintiff was upset with Mecher, so he swung the foot-long wrench in his hand, hitting a steel bench loudly. *Id.* After this incident, Plaintiff was assigned to Jardine Filtration Plant ("Jardine"). SOF ¶¶60-62. Plaintiff kept his title and Group A engineer salary while at Jardine. SOF ¶73. Human Resources investigated the wrench incident, and Plaintiff was suspended for one day. SOF ¶58.

### E. The alleged harassment at Jardine

On one occasion he could name, Plaintiff says co-workers made comments about retirement to him, but Plaintiff did not complain about the comment, and did not take them seriously. SOF ¶69. Plaintiff did not have a chair until he complained, and after he got one an unknown person removed it, so DWM got him another chair. SOF ¶67. Plaintiff's engineer's license was moved lower on the wall, he did not have his name pre-printed on time sheets and he had to work in a cold room and had to perform what he thought were menial duties. SOF ¶68;70. His duties were within his job description. SOF ¶68. Finally, Plaintiff did not receive training which he believed could have allowed him to be promoted to ACOE. SOF ¶72.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions, affidavits and other materials show no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Hakim v. Accenture United*

*States Pension Plan*, 718 F.3d 675, 681 (7ᵗʰ Cir. 2013). Once the moving party presents grounds for judgment, the burden shifts to the non-moving party. *Spierer v. Rossman*, 798 F.3d 502, 507 (7ᵗʰ Cir. 2015). The non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986). Judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to a party's case, and on which that party will bear the burden of proof at trial." *Hakim*, 718 F.3d at 681. The court construes the evidence in the light most favorable to the non-moving party. *Foley v. City of Lafayette,* 359 F.3d 925, 928 (7ᵗʰ Cir. 2004). "[S]ummary judgment is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgment must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7ᵗʰ Cir. 1994).

## ARGUMENT

**I.    Plaintiff Cannot Establish Age Discrimination or Retaliation Based on the City's Decision Not to Promote Him to ACOE**

**a.    Legal standard for age discrimination and retaliation at summary judgment**

"A plaintiff seeking relief under the ADEA must establish that he would not have been treated adversely 'but for' the employer's motive to discriminate against him because of his age." *Baron v. City of Highland Park,* 195 F.3d 333, 338 (7th Cir. 1999). Failure to promote an employee can be an adverse action under the ADEA. 29 U.S.C. § 623(a); *see, e.g., Baron,* 195 F.3d at 338. An ADEA plaintiff may prove age discrimination by either direct or circumstantial evidence, and may rely on the familiar *McDonnell Douglas* burden-shifting model. *Baron,* 195 F.3d at 338-339; *Grayson v. City of Chicago,* 317 F.3d 745, 748 (7th Cir. 2003). However, under the ADEA it is not enough for a Plaintiff to demonstrate there were "mixed motives."  Plaintiff

must show "age was the 'reason' that the employer decided to act." *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 171, 176 (2009).

The Seventh Circuit recently clarified the evidentiary rules for discrimination claims in *Ortiz v. Werner Enterprises, Inc.* 834 F.3d 760 (7th Cir. 2016); *see also Lauth v. Covance Inc.,* 863 F.3d 708 (7th Cir. 2017) (ADEA). A plaintiff may follow the *McDonnell Douglas* test, (*Ortiz,* 834 F.3d at 766) or demonstrate that all evidence, evaluated as a whole, would lead a reasonable jury to determine his age was the cause of the adverse action. *Lauth,* 863 F.3d at 715.

To prove ADEA retaliation, Plaintiff must show "he engaged in statutorily protected activity, he suffered a materially adverse action, and the two are causally related." *Barton v. Zimmer, Inc.,* 662 F.3d 448, 455 (7th Cir. 2011). "ADEA retaliation must be the but-for cause of a materially adverse action, not merely a contributing factor." *Id.* Alleged retaliation may be shown by *McDonnell Douglas*. *Boston v. U.S. Steel Corp.,* 816 F.3d 455, 465 (7th Cir. 2016).

**b.** **Plaintiff was not promoted because he failed Part 3 of the exam, not due to his age**

Because Plaintiff failed Part 3 of the ACOE exam, he fails to show age (or age complaints) were the "but for" cause for not being promoted, either under *McDonnell Douglas* or *Ortiz*. The City determined who was qualified for ACOE by administering an exam. In Part 3, all applicants were asked the same five questions by the same interviewers. Over half the applicants failed Part 3, including Plaintiff, and the only people promoted to ACOE passed Part 3. Plaintiff was not promoted because he failed Part 3, not based on his age.

**1.** ***McDonnell Douglas prima facie* case**

"In order to establish a prima facie case in a failure to-promote context, the plaintiff must show that 1) he belongs to a protected class, 2) he applied for and was qualified for the position sought, 3) he was rejected and 4) the employer granted the promotion to someone outside of the

7

protected group who was not better qualified than the plaintiff." *Grayson,* 317 F.3d at 748. Plaintiff does not meet the second element of the *McDonnell Douglas prima facie* case, because he was not "qualified for the position sought." When an exam has a pass/fail cutoff, persons who fail the exam are not "qualified" for the position. *United Ass'n of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1266 (7th Cir. 1990) (plaintiff was not qualified, when he had "taken the qualifying examination three or four times but had never received a passing grade") *compare, Baron,* 195 F.3d at 340 (where lower score placed plaintiff lower on eligibility list, Plaintiff could not show pretext); *see also Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 273 (7th Cir. 2004) (plaintiff without "A" ranking was not qualified for promotion and therefore could not establish a *prima facie* case).

Plaintiff also fails to meet the fourth element of the *prima facie* case for age discrimination because there is no evidence the City "granted the promotion to someone outside the protected group who was not better qualified than the plaintiff." *Grayson,* 317 F.3d at 748.

Plaintiff cannot show "younger" people were promoted because more than half the persons promoted from the 2014 ACOE exam were over 40. At the time of their promotions, 7 of the 13 promoted were over 40, plus one who declined:

- **Over 40 at Promotion**: Michael Casey (49); John McClellon (49); Josephine Morebito (50); Patrick O'Grady (52); Alex Pavone (48); Bryant Simpson (54); Steve Wilson (41); John Renardo (56 – declined position).

- **Under 40 at Promotion**: Christopher Browne (36); Shawn Cummings (38); Paul Gutierrez (37); Brandon Mecher (28); Joseph Micetich (34); Gregory Zaber (38).

If multiple people are promoted, some inside and some outside the protected class, a plaintiff cannot cherry-pick one to establish a *prima facie* case. Plaintiff must point to a clear pattern of discrimination. *Bates v. City of Chicago,* 726 F.3d 951, 953 (7th Cir. 2013) ("Across the board, [supervisor's] promotions, demotions and lateral transfers did not demonstrate any

clear racial bias... [plaintiff] therefore lacks evidence that he was treated worse than similarly situated firefighters."); *citing Bush v. Comm. Edison Co.,* 990 F.2d 928, 931 (7th Cir. 1993); *see also Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002).

Moreover, all promoted candidates passed Part 3 of the exam, and thus are not similarly situated to Plaintiff. An employee is not similarly situated to those higher on a promotional list. *See, e.g., Stinnet v. City of Chicago,* 630 F.3d 645, 647 (7th Cir. 2011); *Sutherland v. Norfolk Southern Ry. Co.,* 63 Fed.Appx. 904, 906 (7th Cir. 2003). Plaintiff cannot identify people under 40 who failed Part 3 and were promoted: there were none. Whether or not Plaintiff believes he was more qualified than those who passed Part 3 of the ACOE exam is irrelevant. "[A]n employee's own subjective belief that she is as qualified or more qualified than another applicant is insufficient." *Hall v. Forest River, Inc.,* 536 F.3d 615, 620 (7th Cir. 2008).

### 2. *McDonnell Douglas* **pretext, and the "but for" causation under** *Ortiz*

Even if Plaintiff could establish a *McDonnell Douglas prima facie* case, his failure on Part 3 was a non-pretextual reason not to promote him. *See Baron,* 194 F.3d at 340-341 (poor performance on verbal exam legitimate reason not to promote); *Stephens v. Erikson,* 569 F.3d 779, 788 (7th Cir. 2009); *Fudali v. Napolitano,* 2014 WL 1097840 at *8-10 (N.D. Ill. Mar. 20, 2014). There is no evidence suggesting the test was pretext for age discrimination:

> To defeat the city's neutral reasons for refusing to promote him, [Plaintiff] must establish that: (1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the failure to promote; or (3) the proffered reasons were insufficient to motivate the failure to promote. *Baron,* 195 F.3d at 341.

"The issue of pretext does not address the correctness or desirability of the reasons offered for employment decisions. Rather it addresses the issue of whether the employer honestly believes in the reasons it offers." *Wade v. Lerner New York,* 243 F.3d 319, 323 (7th Cir. 2001).

There is no dispute Plaintiff failed Part 3 of the exam. SOF, ¶15. This Court is not a "super-personnel department that re-examines an entity's business decisions." *Baron,* 194 F.3d at 341; *Stephens* 569 F.3d at 788. There is no suggestion that McCarthy or Walsh (both over forty, SOF ¶11) were biased against Plaintiff when they scored Plaintiff. There is no indication they even knew Plaintiff or had any pre-conceived opinions about him. Raw speculation about a person's motives, unsupported by facts, cannot evade summary judgment. *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 987 (7th Cir. 2001).

**c.     Plaintiff's failure to be promoted to ACOE was not retaliatory**

There is also no evidence Plaintiff was denied the ACOE position in 2014 in retaliation for unspecified and undated verbal complaints he made about Sumner to Holland. Although a failure to promote is an adverse action, and for purposes of this Motion only, Defendant admits Plaintiff's generalized verbal complaints to Holland were protected activity, there is no causal connection between the complaint and the ACOE hiring. Plaintiff does not even suggest Walsh or McCarthy, who administered Part 3, was aware of his complaints to Holland. "Clearly, a supervisor cannot retaliate against an employee for a protected activity about which he has no knowledge." *Stephens,* 569 F.3d at 788; *citing Treadwell,* 455 F.3d 778, 782 (7th Cir. 2006); *Filipovich v. K & L Express Syst., Inc.,* 391 F.3d 859, 866 (7th Cir. 2004). Plaintiff offers no evidence that Holland had anything to do with the ACOE hiring.

**II.     Plaintiff Cannot Show He Was Harassed in Violation of the ADEA at Central Park**

**a.   No Evidence of Age Harassment**

The Seventh Circuit has assumed, without deciding, the ADEA allows a hostile work environment claim. *Cooksey v. Bd. of Educ. of Chicago*, 17 F.Supp.3d 772, 794 (N.D. Ill. 2014) (but "no remedy is available to an ADEA plaintiff who merely alleges compensatory damages

for pain and suffering or emotional distress due to a hostile work environment"). A plaintiff claiming a hostile work environment must show: "(1) she was subject to unwelcome harassment; (2) the harassment was based on her [age]; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Racicot v. Wal-Mart Stores, Inc.,* 414 F.3d 675, 677 (7th Cir. 2005) (sex and age harassment). The environment must be "both objectively and subjectively offensive." *Id.* at 677. "In evaluating the objective offensiveness of a plaintiff's work environment, we consider all of the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening and whether it unreasonably interferes with an employee's work performance." *Id.* at 677-78.

Federal law "does not guarantee a utopian workplace, or even a pleasant one." *Vore v. Bell Tel. Co.,* 32 F.3d 1161, 1162 (7th Cir. 1994). Normal workplace friction is not actionable; it must be truly reprehensible, and connected to the protected class. *See, Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (poor working conditions not connected to race); *Patton*, 276 F.3d at 339 (many employees put up with rude, arrogant, or boorish behavior); *Vore,* 32 F.3d at 1162. Scattered references to a protected class do not transform conflicts into actionable harassment. *See, Racicot,* 414 F.3d at 678 (yelling with references to age insufficient); *Johnson v. Hondo,* 125 F.3d 408, 412 (7th Cir. 1997) (sexual references merely animosity).

The conduct about which Plaintiff complains is not severe and pervasive, and largely unconnected to his age. Plaintiff alleges Sanderson and Worden (Plaintiff's subordinates) made a handful of comments about age over several years (some outside the statutory time period). SOF ¶¶36-43., Mecher simply criticized Plaintiff's performance, and never once mentioned his age. SOF ¶45-46. Although Mecher assigned Plaintiff a few jobs he did not like, the duties were not

11

linked to Plaintiff's age. SOF ¶¶47-48. In fact, Plaintiff concedes he willingly performed such activities (such as cleaning the boiler room) in the past. *Id.*

Regarding Plaintiff's interactions with Sumner, the record merely documents two Group A Engineers who disagreed about how to operate Central Park, which spilled over into disputes when they occasionally worked together. Much of Sumner's conduct was merely criticism of Plaintiff's work. Such generic antagonism is not discrimination. *See, e.g., Vore,* 32 F.3d at 1162; *Patton,* 276 F.3d at 339. Nor is Sumner's conduct transformed wholesale into age harassment if he sporadically mentioned age. *See, e.g., Racicot,* 414 F.3d at 678; *Johnson,* 125 F.3d at 412. Nothing suggests Sumner's alleged hostility was age-motivated.

The disputes were also almost entirely verbal. Age never came up during the incident when Sumner moved Plaintiff on June 1, 2015 to get to a valve.  Even assuming Sumner was inappropriately physical during this incident, the record reflects a dispute about closing a valve, not physical harassment because of Plaintiff's age. *See Johnson,* 125 F.3d at 414 ("although ultimately there was a physical altercation… that altercation was not of a sexual nature"). Plaintiff also offers no evidence that his work was affected by Sumner's alleged conduct in any way. *Alexander,* 793 F.3d at 982.

Plaintiff does not provide a basis for employer liability. None of Plaintiff's alleged harassers were supervisors able to affect the terms and conditions of his employment. *Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2439 (2013). ACOE's, such as Brandon Mecher, are not authorized to hire, fire, demote or transfer Operating Engineers, and lack sole authority to discipline. SOF ¶22. Plaintiff must show the City "was negligent with respect to the offensive behavior." *Id.* at 2441.  Here, when Plaintiff complained about Sumner to Holland, things got better, and Holland even ensured Sumner would not give him orders. SOF ¶33.

b.      **No Evidence of Retaliatory Harassment**

Plaintiff also alleges some of the above-described conduct, including the June 1, 2015 altercation with Sumner and the August 11, 2015 duties assigned by Mecher, were harassment in retaliation for his age complaints. As his protected activity, Plaintiff identifies his October 2014 grievance about the ACOE job[3], and his EEOC Complaints.  Plaintiff fails to state a retaliatory harassment claim for the same reasons he fails to show harassment based on age; he does not allege severe and pervasive conduct, and he cannot show retaliation was the "but-for" reason for the harassment. There is no evidence Sumner or Mecher knew Plaintiff filed EEOC charges.

Plaintiff does not provide evidence that his co-workers were aware of any protected activity. Plaintiff's grievance about the ACOE job was a seniority complaint, and age is analytically distinct from seniority. *Hazen Paper Co. v. Biggins,* 507 US 604, 608-09 (1993). Plaintiff further concedes he has no evidence any of his alleged harassers were even aware of his EEOC charges. SOF ¶54. A person cannot retaliate for something they do not know about. *Stephens,* 569 F.3d at 788; *citing Treadwell,* 455 F.3d at 782; *Filipovich,* 391 F.3d at 866.

**III.    Plaintiff Has Not Exhausted His Remedies For Any Age Claims Based on Events After August 2015, and Has Not Shown It Was Age Discrimination or Retaliation**

a.      **Plaintiff Never Filed an EEOC Charge Regarding his September 2015 Assignment to Jardine or his subsequent Suspension**

Plaintiff's assignment to Jardine on September 8, 2015, after he swung a wrench in a dispute with Mecher, and his subsequent suspension, were discrete acts. Plaintiff did not file an EEOC Charge regarding these events or regarding his duties at Jardine. Thus, any claim based on these events is untimely because he failed to exhaust his administrative remedies. *Conley v. Village of Bedford Park,* 215 F.3d 703, 710 (7th Cir. 2000). Furthermore, these claims are not

---

[3] This is not protected activity as it is a complaint about seniority, not age. SOF ¶18.

"reasonably related" to his April, July, and August 2015 Charges. *Conley,* 215 F.3d at 710; *citing Harper v. Godfrey Co.,* 45 F.3d 143 (7th Cir. 1995). "[[Reasonably related] means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Harper,* 45 F.3d at 148 (emphasis in original)("time period is another factor")[4]. Here, the alleged bad actors relating to the harassment at Central Park are Brian Sumner, Carl Sanderson, Jeff Worden, and Brandon Mecher. Plaintiff never interacted with any of them at Jardine. SOF ¶65. Nor did he work with McCarthy or Walsh. The only alleged bad actor identified relating to the Jardine assignment is Alan Stark.

The same conduct is not at issue: in his EEOC Charges Plaintiff largely complains of not being promoted to ACOE (in 2014) and harassment at Central Park (allegedly from 2013 to 2015); in his Complaint Plaintiff also complains about his 2016 suspension, and that the harassment is ongoing (which at deposition he said referred to his assignment at Jardine). SOF ¶4; 48-49, 52. Plaintiff did not exhaust his administrative remedies with regard to his assignment to Jardine or his suspension. The alleged bad actors do not overlap, nor do the events.

**b.     Neither age nor retaliation were the cause of Plaintiff's suspension or reassignment**

Even if Plaintiff's suspension or assignment to Jardine were properly at issue, he does not show age or age complaints were the "but for" cause for these actions. The City sets forth a legitimate reason: Plaintiff swung a wrench during an altercation with Mecher. SOF ¶55. DHR investigated the incident, and Plaintiff offers no evidence to question DHR's impartiality. SOF ¶58. Deputy Commissioner Alan Stark made the decision to assign Plaintiff to Jardine based on Plaintiff's history of altercations with DWM employees. SOF ¶61-62. Plaintiff does not point to

---

[4] While retaliation is more easily linked to a prior charge, Plaintiff maintains at Jardine he was and is harassed "because of my age." SOF ¶66.

any negative experiences with Stark (who is 53 years old), other than Stark not saying "hi" a couple times when they passed in the halls. SOF ¶64. The fact Plaintiff filed his last Charge in August 2015 is of no moment. "[M]ere temporal proximity between the statutorily protected activity and the action… will rarely be sufficient in and of itself to create a triable issue." *Harper v. C.R. England, Inc.,* 687 F.3d 297, 308 (7th Cir. 2012).

Plaintiff may believe the City overreacted by reassigning and suspending him after he swung a wrench, but he cannot escape summary judgment by disagreeing with the wisdom of the decision. Courts "do not sit as a super-personnel department, second-guessing the business decisions of employers." *Aviles v. Cornell Forge Co.,* 183 F.3d 598, 604 (7th Cir. 1999) (transferring employee to allegedly unfavored shift "is not so fishy and suspicious that we will assume it is pretext… a bad decision is not necessarily a discriminatory decision").

## IV.    Conclusion

The City of Chicago respectfully requests the Court grant summary judgment in its favor.

Respectfully submitted,

EDWARD N. SISKEL
Corporation Counsel of the City of Chicago

Employment Litigation Division
30 North La Salle Street, Suite 1020
Chicago, Illinois 60602
(312) 744-6922
(312) 744-4939

s/:    *Daniel Myerson*
DANIEL MYERSON
RENA HONOROW
Assistants Corporation Counsel