# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROMAN TYBURSKI, ) | |
| **Plaintiff** ) | |
|     v. ) | No. 16 CV 9228 |
| ) | Hon. Judge Lee |
| CITY OF CHICAGO, ) | |
| **Defendant** ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

Plaintiff, Roman Tyburski, by and through his undersigned counsel, submits this Response to Defendant's Motion for Summary Judgment:

**I.**     **Legal Standard**

Summary judgment should be granted *only* where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether any genuine fact issue exists, the court must "pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record." *Lee v. Chicago Youth Centers*, 12 C 9245, 2016 WL 1253592 at *4 (N.D. Ill. March 31, 2016) (*citing* Fed. R. Civ. P. 56(c). In doing so, the court "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Id.* at *Lee*, *supra* (*citing Scott* v. *Harris*, 550 U.S. 372, 378 (2007). The court "**may not** weigh conflicting evidence or make credibility determinations." *Id.* at *Lee*, *supra* (emphasis added).

Moreover, as Defendant correctly acknowledges in support of its Motion (*see* Defendant's Memorandum of Law (hereinafter "Mem. Law," at p. 7), a plaintiff in an ADEA action can defeat summary judgment by utilizing the standard *McDonnell Douglas* framework, *or* by demonstrating that the evidence, "evaluated as a whole, would lead a reasonable jury to determine his age was the cause of the adverse action." (*See* Mem. Law, at p. 7) (*citing* Lauth v. Covance, Inc., 863 F.3d 708, 715 (7th Cir. 2017)). Under either approach, it is clear that genuine issues of material fact remain that foreclose Defendant's Motion in the present case.

**II.     Argument**

**A. Genuine Issues Of Material Fact Remain With Respect To Defendant's Failure To Promote Claim**

1. *Plaintiff's Failure To Promote Claim As An Independent Cause Of Action*

Defendant admits that its failure to promote Mr. Tyburski to the "ACOE" position in 2014 constitutes an "adverse action" for ADEA purposes. (*See* Mem. Law at p. 6, *citing* 29 U.S.C., section 623(a) and *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999)). Thus, the linchpin to Defendant's argument with respect to Mr. Tyburski's promotion claim is its contention that "Plaintiff failed Part 3 of the ACOE exam." (*Id.* at p. 7)  However, that is *not* an undisputed fact. In other words, it is undisputed that Defendant "failed" Mr. Tyburski at part 3 of the ACOE test, but there is no admissible record evidence -- nor has Defendant offered any -- to support how or why Defendant failed Mr. Tyburski at that stage of his candidacy.

Thus, Defendant attempts to plug that wide evidentiary hole – to no avail. First, Defendant argues that the interviewers for part 3 of that ACOE exam, here Walsh and McCarthy (*see* Defendant's Rule 56.1 Statement at para. 11, and Plaintiff's Response thereto), purportedly asked each of the candidates the very same questions. (*See* Mem. Law. at p. 7)  However, that "fact" is not supported by the evidentiary record. Here, Walsh testified that he does not know

what questions were asked of any of the candidates, much less that the same questions were asked of each of the candidates. (*See* Plaintiff's Response to Def.'s Rule 56.1 Statement, at para. 14) Likewise, McCarthy testified that he has no recollection at all of his interview with Mr. Tyburski or anyone else, and McCarthy did *not* testify that he asked the candidates the same questions. (*Id.*)

Consequently, Defendant does not even attempt to rehabilitate or cure the deposition testimony of Walsh and McCarthy. Instead, Defendant attempts to proffer the Affidavit of May. (*Id.*) However, May's testimony does not advance Defendant's cause. It is undisputed that, as revealed by her Affidavit, May did not even hold a position of relevance until two years *after* the ACOE interviews at issue. It is similarly undisputed that May did not attend or participate in any of those interviews. (*Id.*) Therefore, she has no personal knowledge of, and there is no foundation for, her claim that the interviewers asked each and every candidate the same questions.

Even if they had, the part that Defendant cannot explain is how or why Mr. Tyburski was purportedly rated a "42," or how or why any other candidate was rated higher than him. Here, McCarthy, one of the two individuals who conducted the verbal interview of Mr. Tyburski, admitted that he cannot testify to any difference between Mr. Tyburski and the other candidates for the ACOE promotion that would have warranted rating Mr. Tyburski lower than any of them. (*See* Plaintiff's Statement of Additional Facts ("Add. Facts") at para. 2) McCarthy further testified that he does not even know who made the decision to select the candidates for the ACOE position at issue, or how that decision was made. (Add. Facts at para. 3)

Likewise, Walsh, the second of the two individuals who conducted the verbal interview of Mr. Tyburski, testified that he is unable to state: how he rated Mr. Tyburski; or how he rated

3

any other candidate; or how Mr. Tyburski compared to any of the other candidates for the ACOE promotion. (Add. Facts at para. 4)

Therefore, all Defendant is left with is the purported "testimony" of May, who has no personal knowledge, to the effect that some unidentified person(s) -- for unknown reasons -- allegedly rated Mr. Tyburski lower than the other candidates and unqualified to pass the part 3 verbal test. That testimony represents nothing more than a conclusion; it is entirely without foundation; and it certainly does not present a legitimate, non-discriminatory basis for Defendant's actions in denying Mr. Tyburski the ACOE promotion. Accordingly, Defendant's conclusion that "Plaintiff does not meet the second element of the *McDonnell Douglas prima facie* case because he was not 'qualified for the position sought,'" rests upon nothing than Defendant's unsubstantiated assurances that it in fact is true. (*See* Mem. Law at p. 8)

From there, Defendant claims that Plaintiff cannot establish that "younger people" were promoted. (Mem. Law at p. 8) That contention is remarkable because, as demonstrated by Defendant's own chart in its Rule 56.1 Statement of Facts, each and every one of the candidates who was selected was *substantially* younger than Mr. Tyburski. (*See* Defendant's Rule 56.1 Statement at paragraph 17) Those so-called more "qualified" candidates were anywhere from 47 years to 19 years younger than Mr. Tyburski. Moreover, as set forth above, neither McCarthy, nor Walsh, nor May, nor anyone else is able to explain how or why they were rated higher than Mr. Tyburski.

Defendant next argues that Mr. Tyburski's promotion claim fails because "all promoted candidates passed part 3 of the exam, and thus are not similarly situated to Plaintiff." (*See* Mem. Law at p. 9) But again, those "facts" represent nothing more than the naked conclusion that Defendant "passed" a number of candidates at part 3 of the exam. As noted above, Defendant

admittedly cannot explain how or why any of them were "passed," or how or why any of them were rated higher than Mr. Tyburski, or how any of them compared to Mr. Tyburski.

Defendant then essentially makes the exact same argument for the second or third time, but words it differently. Defendant argues that, even if Mr. Tyburski has presented a *prima facie case* of age discrimination (which he unquestionably has), his age-based promotion claim still fails because "his failure on Part 3 was a non-pretextual reason not to promote him." (*See* Mem. Law at p. 9) Once again, this conclusion begs the questions of who failed Mr. Tyburski at Part 3; how did they do so; why did so; and how or why Mr. Tyburski rated lower than any of the other candidates. Thus, again, Defendant's bald conclusion, unsupported by any admissible record evidence to answer any of those questions, hardly qualifies as a legitimate, non-discriminatory/non-pretextual reason for Defendant's failure to promote him. In other words, based upon this barren evidentiary record, this Court cannot find that Defendant "honestly believed" (*see* Mem. Law at p. 9) that Mr. Tyburski failed at Part 3 when it cannot even proffer any explanation at all for how or why that happened, much less who made that determination.

It should be noted that, in comparison to Defendant's complete inability to explain how or why Mr. Tyburski was allegedly rated as he was at Part 3, or how or why he was allegedly rated lower than the other candidates, Mr. Tyburski has come forward with admissible record evidence to demonstrate that ageist motives underlied, if not permeated, the ACOE promotion process. It is undisputed that Defendant put together candidate files for each and every one of the applicants for the ACOE promotion at issue. (*See* Add. Facts at para. 29) It is also undisputed that Defendant redacted or blacked out certain personal and other information regarding those candidates in such files. (*Id.*) However, it is undisputed that Defendant did *not* redact or black out the year of birth of any of the candidates, including Mr. Tyburski. (*Id.*)

Defendant cannot not offer any reason, much less a legitimate and non-pretextual one, to explain why those making the selections and otherwise involved in the process for the ACOE promotion at issue would have any need to know the year of births of the candidates, including Mr. Tyburski's – and thus the candidates' ages.

In addition, both of the interviewers for the ACOE promotion, McCarthy and Walsh, admitted that they viewed Mr. Tyburski, then 75 years old, as an "older" candidate for the position. McCarthy testified that he knew Mr. Tyburski was an older gentleman, close in age to him (i.e., McCarthy 63 years old). (*See* Plaintiff's Response to Defendant's Rule 56.1 Statement, at para. 13) Walsh admitted that he too knew that Mr. Tyburski was an older gentleman, and that Plaintiff was older than he (Walsh, 56 years old). (*Id.*) Accordingly, since neither McCarthy nor Walsh could explain how or why they rated Mr. Tyburski with respect to Part 3 of the exam, or how he compared to any other candidate, the finder of fact should be allowed to determine what role Mr. Tyburski's age played in the decision-making of McCarthy and Walsh. Put simply, since McCarthy and Walsh cannot rule out that Mr. Tyburski's age motivated their rating or decision, the finder of fact must be allowed to consider what role it played.

Furthermore, Mr. Tyburski has come forward with additional admissible record evidence of pretext. Here, a review of the documents that May claims to have relied upon, namely, the rating sheets for Mr. Tyburski (*see* exhibits to May Affidavit), appear to demonstrate pretext and that something else was afoot here and that the reason now being proffered by Defendant for the denial of the ACOE position is not the real reason.

More specifically, the third question posed to Mr. Tyburski's during his interview related to the steps necessary to put a centrifugal pump into service. (*See* Add. Facts, at para. 31) Prior to answering that question, Mr. Tyburski inquired and verified with them that he could provide

6

an answer to that inquiry by way of explaining the processes of putting a turbine powered centrifugal pump into service. (*Id.* at para. 32) They immediately answered in the affirmative. (*Id.*) Accordingly, he proceeded to answer that question completely, including all of the steps that were necessary. (*Id.*) However, in reviewing the City's document production, portions of which are now attached to Ms. May's Affidavit in support of the City's Motion for Summary Judgment, the alleged rating sheets for Mr. Tyburski's interview demonstrate that someone later indicated on each of those interview forms that Plaintiff had been substantially downgraded, relying upon the fact that he had only used the turbine powered centrifugal pump example, despite the fact that it had been specifically vetted and cleared by Mr. McCarthy and Mr. Walsh prior to answering the question. (*Id.*) If Mr. Tyburski had been instead given proper full credit for fully answering that question, as was merited, he would have passed or qualified Part 3. (*Id.* at para. 33) Indeed, the interview forms indicate that his answer was correct and complete – just like Mr. McCarthy and Mr. Walsh indicated to me verbally right after he answered that question. (*Id.*)

Furthermore, Mr. Tyburski has presented additional evidence of pretext through the testimony and admissions of Defendant's human resources representatives, Mr. Skopis ("Skopis"). (*See* Add. Facts at paras. 21-23; 26-28) In sum, Skopis admits that Mr. Tyburski's complaints of age discrimination with respect to the ACOE denial of promotion may in fact have been well-founded after investigation, or at least he cannot rule that out. (Add. Facts at paras. 21-23; 26-28)

Finally, the candidate files for the other candidates for the ACOE promotion demonstrate that Mr. Tyburski was more qualified than each of the other candidates for the ACOE position based upon his experience, tenure, skills, and qualifications. (*Id.* at Add. Facts, at para. 34)

2. *Plaintiff's Failure To Promote Allegations As Evidence Of Retaliation*

Defendant additionally argues that, "[T]here is no evidence Plaintiff was denied the ACOE position in 2014 in retaliation" for his prior internal complaints to Defendant. (*See* Mem. Law at p. 10) In making that argument, Defendant first concedes, at least at this stage, that Mr. Tyburski's prior (i.e., pre-ACOE promotion process) internal complaints constituted "protected activity." (*Id.*) Defendant nevertheless argues that its denial of the ACOE promotion to Mr. Tyburski could not have been retaliatory because Walsh and McCarthy were not then aware of Mr. Tyburski's prior complaints. (*Id.*) As an initial matter, Defendant has not offered any admissible record evidence for that conclusion. More importantly, what Walsh and McCarthy knew or did not know during the ACOE promotion process only matters if they were the decision-makers with respect to the ACOE determinations. As noted above, neither McCarthy nor Walsh claimed to have made the decision with respect to Mr. Tyburski or any of the other candidates. Therefore, Defendant's argument fails and genuine issues of material fact remain as to whether Defendant denied Mr. Tyburski the ACOE promotion in retaliation for engaging in protected activity by making internal complaints of age discrimination.

**B. Genuine Issues Of Material Fact Remain With Respect To Defendant's Age-Based Hostile Work Environment Claim**

In an attempt to defeat Mr. Tyburski's age-based hostile work environment claim, Defendant cites a litany of boilerplate language from the Title VII and ADEA hostile work environment case law. (*See* Mem. Law at pp. 10-12) Overall, the thrust of Defendant's argument is that the conduct to which Mr. Tyburski was subjected was just not "severe and pervasive" *enough*. Boilerplate aside, each of these types of cases is decided on its own set of facts. The facts here clearly demonstrate that Mr. Tyburski was subjected to a sufficiently

"severe and pervasive" environment of age-based harassment and discrimination to allow him to defeat summary judgment.

For example, Sumner's age-based conduct started "right [the] first month" Mr. Tyburski began working at the Central Park location. (*See* Plaintiff's Response to Def.'s Rule 56.1 Statement, at para. 27) Sumner directed his demeaning, age-based comments towards Mr. Tyburski at "every opportunity." (*Id.* at paras. 28-30) Moreover, Sumner's age-based conduct also included Sumner actually "physically just bump[ing]" or "push[ing]" Mr. Tyburski as often as "once a week." (*Id.* at para. 30)

When Mr. Tyburski engaged in protected activity and complained, the conduct did not permanently stop. (*Id.* at paras. 32-33) Instead, it just started up all over again. (*Id.*) In addition, Skopis admitted that he cannot rule out that Mr. Tyburski's complaints of an age based hostile work environment were in fact well-founded, after investigation. (*See* Add. Facts, at paras. 21-23)

In addition to Sumner's discriminatory age-based harassment: Sanderson called Mr. Tyburski "old" and thus a "piece of shit" on a variety of occasions. (*See* Plaintiff's Response to Def.'s Rule 56.1 Statement, at paras. 36-39) Mecher likewise directed harassing, age-based comments towards Mr. Tyburski. (*Id.* at paras. 44-46) More importantly, Mecher required Mr. Tyburski to perform work-related tasks that were outside of his job duties and which none of his similarly situated younger peers were required to perform. (*Id.* at para. 47, 50-51)

While at the Jardine location, the age-based and retaliatory harassment was more of the same, and then some. At Jardine, Defendant denied Mr. Tyburski training; denied him even a chair for months; subjected him to age-based comments; moved his engineer's license to a lower tier on the wall; and took his name off of his time sheets. (*See* Plaintiff's Response to Def.'s

Rule 56.1 Statement, at paras. 66-67, 69-70, 72) More significantly, Defendant regularly required Mr. Tyburski to perform tasks that were outside his job-duties and which his similarly situated younger peers were not required to perform. The following passages from Mr. Tyburski's deposition testimony exemplify what would appear to anyone with any common sense or real life work experience as an obvious, or at least thinly veiled, attempt to try to force Mr. Tyburski to simply quit:

> For period I could almost say a year or near a year, I was ordered to mop and scrub floors and I was ordered to scrub and polish some equipment; namely speaking, filter tables . . . And I did as many as 84. 84 filter tables, you're talking equipment that is more than . . . – half a length of this table and almost as wide as this table in actually refrigerator – I mean in 50-degree temperature area; very cold. I was ordered to do those things for length of the day.
>
> . . . At one point, I was transferred for about six months to kitchen. There is a kitchen area next to application. The kitchen area about twice the size of this room with two stoves and sinks and things like that and a long table.
>
> . . . That's actually very important because, for example, I was switched from application to kitchen. I was told to sit on a hard bench about as long as the table for length of the day. That's it. There was no room for any chairs . . . Then they told me that I have to go and clean and polish filter tables for three months.
>
> . . . I am ordered to stay in a west filter building, which actually it's very – it's polluted with chlorine in the air. Other engineers come and go and don't stay six, seven hours. I'm ordered to stay there six hours at least and I have to breathe chlorine because the water is highly chlorinated and chlorine gets in the air.

(*See* Plaintiff's Response to Def.'s Rule 56.1 Statement, at para. 68; *see also* Plaintiff's Statement of Additional Facts, at paras. 16-20)

With respect to all of that undisputed testimony regarding the harassment, discrimination, and retaliation at Jardine, Defendant apparently recognizes that it potentially dooms its Motion. Accordingly, Defendant attempts to argue that none of that admissible record evidence can be considered by this Court because Mr. Tyburski was purportedly required to file new EEOC

Charges -- in addition to the several he had already filed prior to his tenure at Jardine -- each and every time an incident occurred at Jardine. That argument misstates the law, and defies logic.

The timely filing of a Charge of Discrimination with the EEOC "is not a jurisdictional predicate to actions under the ADEA or under Title VII. Rather, it is a requirement that is subject to equitable modification when necessary to effect the remedial purposes of the statute." *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982) (emphasis added); *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir.1978); *see also Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989), *superceded on other grounds* ("the judicial complaint in a Title VII case can embrace not only the allegations in the administrative charge but also discrimination like or reasonably related to the allegations of the charge and growing out of such allegations"); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985). A claim in a Complaint that was not explicitly set forth in a Charge of Discrimination is "like" or "reasonably related to" an EEOC Charge if it "reasonably could be expected to grow out of an EEOC investigation of the charge." *See, e.g., Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 550 (7th Cir.2002); *Jenkins v. Blue Cross Mut. Hosp. Ins.*, 538 F.2d 164, 167 (7th Cir.1976); *Wierciszewski v. Granite City Illinois Hosp. Co., LLC*, No. 3:11CV-00120-GPM-SCW, 2011 WL 1615191, at *4 (S.D. Ill. Apr. 28, 2011).

Moreover, "given the Act's remedial purposes, charges are to be construed with utmost liberality." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 906 (7th Cir. 1981); *Egan v. Palos Community Hosp.*, 889 F.Supp. 331, 337 (N.D. Ill. 1995) ("[T]he standard for determining whether an EEOC charge sufficiently encompasses the allegations of a subsequent federal complaint is a liberal one in order to effectuate the remedial purpose of the anti-discrimination statutes");

In addition, "an employee is not required to file a separate EEOC charge alleging retaliation when the retaliation occurs in response to the filing of the original EEOC charge. *Aviles v. Cornell Forge Co.*, 183 F.3d 598, 603 (7th Cir.1999); *Gawley v. Indiana Univ.*, 276 F.3d 301, 314, n.8 (7th Cir. 2001). Indeed, in making a claim for retaliation, the plaintiff "need not bring a separate EEOC charge at all under the general rule . . . announced in *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir.1989)." *Aviles,* 183 F.3d 598, 603 (7th Cir. 1999). The reasons for that is a plaintiff "will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation." *Malhotra, supra,* 885 F.2d at 1312.

Applying those legal principles to the facts of this case leads to the conclusion that Mr. Tyburski's allegations in this lawsuit, including but not limited to those with respect to his treatment at Jardine, are very much "like" or "reasonably related to" the allegations contained within his Charges of Discrimination. It is the very type of conduct that occurred throughout Mr. Tyburski's tenure with the City, and the very type of conduct set forth in Mr. Tyburski's Charges. For that reason alone, Defendant's attempts to narrowly define and limit Mr. Tyburski's claims in the present lawsuit should be rejected by this Court. Moreover, as noted above, Mr. Tyburski was not required to repeatedly file new Charges alleging further acts of retaliation, after he had already done so in a prior Charge or Charges.

**C. Genuine Issues Of Material Fact Remain With Respect To Defendant's Retaliation Claims**

Defendant has not offered any other compelling factual or legal bases to defeat's Mr. Tyburski's retaliation claims. The admissible record evidence, detailed above, and detailed by Mr. Tyburski in both his Response in opposition to Defendant's Rule 56.1 Statement and in his Additional Facts, establishes a variety of adverse actions undertaken by Defendant after the filing

12

of his Charges and *because of* the filing of those Charges. At a minimum, genuine issues of material fact remain with respect to the causation between Mr. Tyburski's filing of his Charges and Defendant's actions, including but not limited to its creation of an age-based hostile work environment. Moreover, Defendant has not come forward with sufficient admissible record evidence to defeat all inferences of causation as a matter of law.

If all that were not enough, there is more. Here, Skopis admitted that he cannot rule out that fact that Mr. Tyburski's retaliation claims are in fact well-founded. (*See* Add. Facts, at para. 25)

**WHEREFORE**, Plaintiff, Mr. Tyburski, by and through her undersigned counsel, respectfully requests the entry of an Order denying Defendant's Motion for Summary Judgment, and for such other and further relief as this Court deems just and appropriate.


**RESPECTFULLY SUBMITTED,**


By: <u>s/Michael I. Leonard</u>
 **Counsel for Plaintiff**



**LEONARDMEYER LLP**
Michael I. Leonard
120 North LaSalle, 20th Floor
Chicago, Illinois 60602
(312)380-6634 (direct)
(312)264-0671 (fax)
mleonard@leonardmeyerllp.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that, on December 6, 2017, he caused the above to be served on Defendant's counsel of record by way of ecf e-filing it.

**/s/ Michael I. Leonard**