# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROMUALD TYBURSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 16 C 09228 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Romuald Tyburski brings this action against his employer, the City of Chicago (the "City"), for age discrimination, alleging failure to promote, retaliation, and hostile work environment claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*  Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.  For the reasons stated herein, Defendant's motion for summary judgment [39] is granted.

## Factual Background[1]

### I.    Plaintiff's Employment at Central Park

Plaintiff Romuald Tyburski is currently employed by the City as an engineer with the Department of Water Management (the "Department"), for which he receives a full salary.  Def.'s LR 56.1(a)(3) Stmt. ¶¶ 1, 73, ECF No. 41.  The Department operates various steam-pumping stations.  Each station is overseen by a

---

[1]    The following facts are taken from Defendant's Local Rule 56.1(a)(3) statement of undisputed material facts [41] and Plaintiff's Local Rule 56.1(b)(3)(C) statement of additional facts [49] and are undisputed or deemed admitted unless otherwise noted.

Chief Operating Engineer, and shifts at the stations are managed by an Assistant Chief Operating Engineer ("Assistant Chief"), who supervises several Group C Operating Engineers ("Group C Engineers"). *Id.* ¶ 21. In addition, a Group A Operating Engineer ("Group A Engineer") works under the Assistant Chief on each shift and supervises a stationary fireman in a boiler room. *Id.*

The City hired Tyburski in 1993 as a Group C Engineer when he was 53 years old and assigned him to the Department in 2001. *Id.* ¶ 1. In 2013, at age 74, Tyburski applied for and received a promotion to Group A Engineer, and he was assigned to the Central Park Pumping Station ("Central Park") in September 2013. *Id.* ¶¶ 5–6, 20.

Tyburski described various incidents in which he felt that he was harassed by coworkers based on his age during his employment at Central Park. Beginning around the fall of 2013, Brian Sumner, a Group A Engineer who regularly assumed the role of Assistant Chief, made age-related comments to Tyburski at what Tyburski described as "every opportunity," as much as once per week. *Id.* ¶ 28; Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt., Ex. Tyburski Dep. at 65: 1–66:10, 70:14–71:7, ECF No. 48-1. Sumner would tell Tyburski that he was "too old," and that "people of [Tyburski's] age should not be promoted to [the Group A Engineer] position." Def.'s LR 56.1(a)(3) Stmt. ¶ 29; Tyburski Dep. at 65:19–66:5, 67:7–16.

Tyburski complained about Sumner's comments to a Chief Operating Engineer, Andre Holland, a few times in 2013 and 2014. Def.'s LR 56.1(a)(3) Stmt. ¶ 32; Tyburski Dep. at 73:7–22. After each complaint, Sumner's comments would cease for a "week or two." Def.'s LR 56.1(a)(3) Stmt. ¶ 33; Tyburski Dep. at 73:10–14.

According to Tyburski, Holland also directed Sumner to work below Tyburski as a Group C Engineer when Sumner and Tyburski worked the same shift. Def.'s LR 56.1(a)(3) Stmt. ¶ 33.

Jeff Worden, a Group C Engineer, worked with Tyburski both from May 2011 to April 2012, and then worked under Tyburski's supervision at Central Park from 2013 to 2015. Def.'s LR 56.1(a)(3) Stmt. ¶ 40. Worden mentioned Tyburski's age three or four times while working together. *Id.* ¶ 41. For example, in 2012, Tyburski asked to join Worden in walking laps over lunch, and Worden responded, "Roman, you too old. You cannot keep up with me." *Id.* ¶ 42. Tyburski then lapped Worden three times. *Id.*

## II. Application for Assistant Chief Promotion

Around June 2014, the City posted a bid opportunity for employees to apply for a promotion to an Assistant Chief position. *Id.* ¶ 7. Tyburski, who was 76 years old at the time, applied for the position. *Id.* The promotion process involved a three-part exam (the "Assistant Chief Exam"): two written exams (Parts 1 and 2), and a verbal exam (Part 3). *Id.* ¶ 8. The passing score was 70% for the written exams and 60% for the verbal exam. *Id.*; Def.'s LR 56.1(a)(3) Stmt., Ex. D, May Aff. ¶ 6, ECF No. 41-5.[2]

---

[2] Tyburski disputes those of the City's facts that rely on the affidavit of City Testing Manager Jill May. Tyburski argues that May's affidavit lacks foundation because she was not involved in the 2014 Assistant Chief promotion process and did not hold a position that provided her with any knowledge about the process until two years later. *See, e.g.*, Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 14–16. May's affidavit concerns records of pre-employment selection testing, which are attached to the affidavit. *See generally* May Aff. Because she is the current Testing Manager in an office responsible for maintaining such records, *see id.* ¶¶ 1, 3, May has personal knowledge of the testing files, *see id.* ¶¶ 2, 4, and her affidavit thus

Two Chief Operating Engineers, James McCarthy and Maurice Walsh, who had been trained to administer verbal exams for the City, conducted the verbal exams for the Assistant Chief promotion process. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 11–12. McCarthy and Walsh were provided with the exam questions, correct answers, and a scoring rubric from the City's Human Resources Department, which they used to interview and score each candidate.[3] McCarthy Dep. at 21:3–22:7; Walsh Dep. at 11:17–22; May Aff. ¶ 5. Walsh did not know Tyburski prior to the verbal exam, and McCarthy had only heard of his name, but did not know his age. Def.'s LR 56.1(a)(3) Stmt. ¶ 13; Def.'s LR 56.1(a)(3) Stmt., Ex. F, Walsh Dep. at 8:21–9:3, ECF No. 41-7; Def.'s LR 56.1(a)(3) Stmt., Ex. E, McCarthy Dep. at 12:7–14:2, ECF No. 41-6.

All but three of the 32 candidates who took the written exam passed, including Tyburski. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 9, 15. The results of the verbal exam were

---

has sufficient foundation. *See* Fed. R. Evid. 803(6), 902(11); *see also Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006) ("The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices." (citation omitted)). As such, the Court may consider May's affidavit and the attached testing records as evidence.

[3] Tyburski objects to May's statement that McCarthy and Walsh asked all applicants the same questions in the verbal exam as hearsay, arguing that May did not attend or participate in the interviews. Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt. ¶ 14. May based her statement on the records of pre-employment selection testing, which are maintained by the City in ordinary and regular course of business; May's duty as Testing Manager includes overseeing these records. *See* May Aff. ¶¶ 1–6. Accordingly, the records and May's characterization of them are admissible as records made at or near the time of an act by someone with knowledge, and made and kept in the course of regularly conducted activity of the organization. Fed. R. Evid. 803(6); *see also Thanongsinh*, 462 F.3d at 775–77 (stating that the lower court abused its discretion when excluding an interviewer's scoresheet because the scoresheet was admissible under the business records exception to the hearsay rule). And to the extent that Tyburski objects to the questions themselves as hearsay, they are not presented for the truth of the matter asserted.

more varied. Thirteen candidates passed the verbal exam with scores above 60% and were promoted to Assistant Chief. *Id.* ¶¶ 15–16. The passing candidates ranged in age from 28 to 56 years old, with seven of them over 40 years old. *Id.* ¶ 17. Sixteen candidates failed the verbal exam and were not promoted, including Tyburski, who scored 42%. *Id.* ¶ 15.

One of the verbal exam questions asked candidates to describe the steps necessary to put a centrifugal pump into service. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 30, ECF No. 49. Tyburski asked if he could answer by explaining the process for a turbine-powered centrifugal pump. McCarthy and Walsh told him he could.[4] *Id.* ¶ 31. Tyburski did not receive full credit for his answer to the question. *Id.* ¶ 32; May Aff. at TYB.DEF001783, TYB.DEF001788, TYB.DEF001789, TYB.DEF001794. Tyburski believed he was downgraded for using only the turbine-powered centrifugal pump example despite McCarthy's and Walsh's approval. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 33; Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. Tyburski Aff. ¶¶ 3–4, ECF No. 49-2.

In October 2014, Tyburski filed a grievance with the City asking that it reconsider his bid for the position and complaining that the Department "promoted an Engineer of lesser rank (OEC)[5] and lesser seniority with no supervisory

---

[4] The City moved to strike this statement as inadmissible hearsay, but Tyburski's statement in his affidavit was presented for the effect on the listener, not for the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Here, Tyburski states that he was granted permission to use the example of a turbine-powered centrifugal pump in answering this question, and he proceeded on that understanding. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 31. Accordingly, this statement is not hearsay.

[5] Presumably, this refers to a Group C Operating Engineer. *See* Def.'s LR 56.1(a)(3) Stmt., Ex. H, City of Chicago Employee Problems Form at TYB.DEF000626, ECF No. 41-9.

experience" to the position, in violation of his union's collective bargaining agreement. Def.'s LR 56.1(a)(3) Stmt. ¶ 18.

## III. Continued Harassment at Central Park

After being denied the promotion, Tyburski kept working at Central Park, where the age-related commentary continued. Carl Sanderson, a Group C Engineer at Central Park who worked below Tyburski on the chain of command, had a relatively good working relationship with Tyburski. *Id.* ¶ 39. Despite that, Tyburski describes up to five age-related incidents involving Sanderson. *Id.* On two of these occasions, in late 2014 or early 2015, Sanderson told Tyburski, "Roman, you are old and you [sic] piece of shit." *Id.* ¶ 38; Tyburski Dep. at 76:14–78:10. Tyburski complained to the City about these comments. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 5; Tyburski Dep. at 78:10–79:1.

In 2015, Tyburski told Jeff Worden, a Group C Engineer, that his work was sloppy and unacceptable, but Worden refused to redo the work, telling Tyburski that he was "fucking old" and did not know what he was doing. *Id.* ¶ 43; Tyburski Dep. at 83:13–84:19. Tyburski complained to Andre Holland, the Chief Operating Engineer, who directed Worden to redo the work. Def.'s LR 56.1(a)(3) Stmt. ¶ 43.

Brandon Mecher began working as an Assistant Chief at Central Park in March 2015. Mecher made several comments about Tyburski's performance that Tyburski interpreted as implying that Tyburski was too old for the job. *Id.* ¶¶ 44–45; Tyburski Dep. at 92:21–93:19. In addition, Mecher occasionally directed Tyburski to perform certain tasks that Tyburski believed were beneath his job responsibilities, such as boiler water tests. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 47, 50. These tests were

typically the responsibility of the fireman working beneath a Group A Engineer, and Tyburski had never seen a Group A Engineer conduct boiler water tests at any of the three pumping stations where he had worked.[6] *Id.* ¶ 47; Tyburski Dep. at 95:6–98:1, 99:16–100:2. While neither Holland nor Mecher mentioned Tyburski's age explicitly, Tyburski interpreted the assignment as challenging his knowledge and ability to conduct the test on account of his age. Def.'s LR 56.1(a)(3) Stmt. ¶ 47; Tyburski Dep. at 95:2–96:2, 101:20–102:10. Tyburski complained to Holland and Mecher about being asked to perform this task, but Holland told Tyburski to "just do it." Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 8; Tyburski Dep. at 100:21–101:7.

Tyburski filed his first charge with the EEOC on April 24, 2015, complaining that the City denied him a promotion due to his age, that Sumner had subjected him to discriminatory age-related comments, and that his coworkers had demeaned, ridiculed, and harassed him because of his age and in retaliation for filing an internal grievance. Def.'s LR 56.1(a)(3) Stmt. ¶ 48; *see* Def.'s LR 56.1(a)(3) Stmt., Ex. K, EEOC Charge of Discrimination at TYB.DEF004793, ECF No. 41-12. Tyburski did not discuss his EEOC charge with Mecher, Holland, Sumner, Sanderson, or Worden. *Id.* ¶ 54; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 9; Tyburski Dep. at 103:2–24.

---

[6] Tyburski testified that his peers were "never asked to do those tests" and that none of the Group A Engineers, even those at other stations, were required to conduct boiler water tests. Def.'s Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 6–7. The City argues that Tyburski lacks foundation to speak about the tasks that were assigned at other pumping stations where Tyburski did not work. *Id.* The Court agrees. Tyburski provides no basis for this testimony beyond that he had never seen a Group A Engineer doing such a task. *See* Pl.'s Dep. at 99:10–100:5.

Around June 1, 2015, as Tyburski was closing a boiler valve, Sumner told Tyburski, "Roman, what the fuck you doing? You leave this valve open." Def.'s LR 56.1(a)(3) Stmt. ¶ 34; Tyburski Dep. at 57:17–18. Tyburski continued to close the valve. Tyburski Dep. at 57:19–21. Sumner then grabbed Tyburski by the neck or arm and "yanked him" away from the valve. *Id.* Sumner did not mention Tyburski's age during this interaction. Def.'s LR 56.1(a)(3) Stmt. ¶ 34.

On July 2, 2015, Tyburski filed a second charge with the EEOC alleging that Sumner harassed and physically intimidated him, that Mark O'Malley, a pumping engineer, encouraged Sumner to harass him, and that Tyburski received a temporary reassignment[7] to an undesirable location in retaliation for his first EEOC complaint. *Id.* ¶ 49; Def.'s LR 56.1(a)(3) Stmt., Ex. K, EEOC Charge of Discrimination at TYB.DEF004960, ECF No. 41-12.

On August 11, 2015, Mecher assigned Tyburski to mop and scrub the garage floor at Central Park, a job that Tyburski felt was improper because he did not park in the garage. *Id.* ¶ 50. Tyburski had mopped the floors of the boiler room several times, but initially refused Mecher's assignment because he had not seen other Group A Engineers doing this work and did not believe it was within his job duties. *Id.* ¶¶ 50–51; Tyburski Dep. at 128:3–129:9, 130:1–6, 138:15–139:9. Tyburski then received a disciplinary "counseling note" directing him to perform the task, and asserts that he was "threatened that . . . if [he did] not scrub and mop the garage

---

[7] Tyburski testified that he received notice in June 2015 of an impending reassignment, but he was not ultimately transferred. *See* Tyburski Dep. at 122:9–123:13.

floor, [he would] be escorted by Chicago police out of the station."[8] Def.'s Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 10–11; Tyburski Dep. at 130:1–22, 136:23–137:10. Tyburski complained internally to the City Human Resources department about this assignment. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 12; Tyburski Dep. at 139:20–140:19.

On August 19, 2015, Tyburski filed a third and final EEOC charge alleging that Mecher had retaliated against Tyburski by forcing him to sweep the garage, but Tyburski never signed the charge. Def.'s LR 56.1(a)(3) Stmt. ¶ 52; Def.'s LR 56.1(a)(3) Stmt., Ex. K, EEOC Charge of Discrimination at TYB.DEF005111, ECF No. 41-12. Tyburski never spoke about any of his EEOC charges with Mecher, Holland, Sumner, Sanderson or Worden. *Id.* ¶ 54.

On September 8, 2015, Mecher told Tyburski that Tyburski was "really stupid," that he "d[id]n't know what [he was] doing," and that Mecher "kn[e]w more" than Tyburski. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 55–56; Tyburski Dep. at 151:17–152:2. At the time, the two were standing about two feet from each other, facing a steel bench. The comments upset Tyburski, who was holding an approximately twelve-inch wrench, and he swung the wrench onto the steel bench in front of him and told Mecher to stop harassing him. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 56–57; Tyburski Dep. at 159:2–8. Tyburski was then told to leave the station. Def.'s LR 56.1(a)(3) Stmt. ¶ 57;

---

[8] Defendant moves to strike this statement as inadmissible hearsay, but it was presented for its effect on Tyburski, not for the truth of the matter asserted. *See* Fed. R. Evid. 801(c); *Schindler*, 474 F.3d at 1011 ("[A] statement offered to show its effect on the person who heard the statement is not hearsay."); *United States v. Robinzine*, 80 F.3d 246, 252 (7th Cir. 1996) (admitting non-hearsay testimony because "the significance of the words was *that* they were said (*i.e.*, that a 'verbal act' occurred) and how they affected [the witness], not the truth-value of what was said").

Tyburski Dep. at 159:15–23. The City's Department of Human Resources investigated this incident, and in February 2016, suspended Tyburski for one day. Def.'s LR 56.1(a)(3) Stmt. ¶ 58; Def.'s LR 56.1(a)(3) Stmt., Ex. M, Suspension Notice at TYB.DEF00357, ECF No. 41-14.

At some point, Alex Skopis, an Equal Employment Opportunity ("EEO") Investigator in the City's Human Resources department, investigated Tyburski's internal complaints of age discrimination, retaliation, and denial of a promotion based on age. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 21, 25, 26. Skopis could not recall, however, any details of the investigation, including the date of Tyburski's complaints, the year of the investigation, or the outcome of the investigation. Def.'s Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 22–23, 25, 27–28.

## IV. Transfer to Jardine

After the wrench incident with Mecher, Deputy Commissioner Alan Stark reassigned Tyburski from Central Park to the Jardine Water Purification Plant ("Jardine"). Def.'s LR 56.1(a)(3) Stmt. ¶¶ 60–63. This was in accord with the Department's general practice of moving an alleged aggressor after a violent incident.[9] *Id*. Tyburski wrote a letter to Skopis complaining about the incident and his resulting transfer. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 15; Tyburski Dep. at 161:2–24.

Tyburski described multiple instances at Jardine in which, he contends, he was treated differently from his peers because of his age. Def.'s LR 56.1(a)(3) Stmt. ¶ 66;

---

[9]     Tyburski disputes the real reasons for his reassignment but provides no citations to the record to deny these assertions, and accordingly, these facts are deemed admitted. Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 61, 63; *see Aberman*, 242 F. Supp. 3d at 677.

Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 16–17. First, Tyburski claims that coworkers made comments about retirement to him. Def.'s LR 56.1(a)(3) Stmt. ¶ 69. Second, Tyburski contends that he received no formal training on his new job duties at Jardine, and that but for this lack of training, he could have demonstrated that he could handle a promotion to the Assistant Chief position. Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 66, 71–72; Tyburski Dep. at 192:19–193:12, 202:17–20. Third, Tyburski was not given a chair for several months and had to sit on a bench instead. *Id.* ¶ 67. He complained and, after six months, received an approximately 50-pound chair, which Tyburski had to drag roughly one-quarter mile to his work station. *Id.*; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 16. Fourth, Tyburski was assigned to duties that he considered to be menial, namely, cleaning filter tables alone in a cold, polluted room. Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt. ¶ 68; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 17. Finally, Tyburski was given temporary timesheets without his name pre-printed and his engineer's license was moved to a lower tier on a wall. Def.'s LR 56.1(a)(3) Stmt. ¶ 70; Tyburski Dep. at 182:21–24, 185:1–8. Tyburski complained to Paul Gutierrez, an Assistant Chief at Jardine, about the location of his engineer's license, to which Gutierrez responded, "you shouldn't be here," and "[w]herever you go, you cause trouble." Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 19; Tyburski Dep. at 182:10–184:20.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). The movant bears the initial burden of establishing that

there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). Once the movant has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmovant must then set forth specific facts demonstrating that there are disputed material facts that must be decided at trial. *Id.* at 321–22. The moving party is entitled to summary judgment where the non-moving party fails to establish an "essential element" of the case for which that party will bear the burden of proof at trial. *Id.* at 323.

To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in [his] favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012). In determining whether a genuine issue of material fact exists, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court may not make credibility determinations or weigh conflicting evidence. *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

<u>Analysis</u>

Tyburski asserts claims for failure to promote, retaliation, and workplace harassment based on age under the ADEA, 29 U.S.C. § 623.[10] Compl. ¶¶ 18–20, ECF No. 1. The City seeks summary judgment on all three claims. Def.'s Mot. Summ. J. ¶¶ 6–8, ECF No. 39.

## I. Age Discrimination for Failure to Promote

Tyburski first claims that the City discriminated against him on the basis of age when it did not promote him to the Assistant Chief position. Compl. ¶ 19. The ADEA prohibits an employer from discriminating on the basis of age against any individual over the age of forty. 29 U.S.C. §§ 623(a), 631(a); *Formella v. Brennan*, 817 F.3d 503, 514 (7th Cir. 2016). A plaintiff bringing an ADEA claim must "establish that he would not have been treated adversely by his employer 'but for' the employer's motive to discriminate against him because of his age." *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999); *see also Skiba*, 884 F.3d at 719 (stating that it is insufficient to show that age was a motivating factor, and instead, plaintiff must "prove that, but for his age, the adverse action would not have occurred"). A failure to promote an employee can be an adverse employment action under the ADEA. *See, e.g., Grayson v. City of Chi.*, 317 F.3d 745, 748 (7th Cir. 2003); *Baron*, 195 F.3d at 340.

The Court will first consider whether Tyburski has made out a *prima facie* case under the traditional *McDonnell Douglas* burden-shifting framework. *See McDonnell*

---

[10] While the Complaint does not identify the specific claims in these terms, Tyburski has since clarified that he brings these three causes of action. *See* Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt. ¶ 4; Pl.'s Resp. Def.'s Mot. Summ. J., ECF No. 50.

*Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016) (stating that the *McDonnell Douglas* framework remains one of the ways to establish a *prima facie* case). In addition, the Court must consider whether the evidence as a whole would permit a reasonable factfinder to conclude that a proscribed factor, such as the plaintiff's age, caused the adverse employment action. *Ortiz*, 834 F.3d at 765; *see also Lauth v. Covance, Inc.*, 863 F.3d 708, 715 (7th Cir. 2017); *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

### A. *McDonnell Douglas* Burden-Shifting Framework

To establish a failure-to-promote claim under the *McDonnell Douglas* framework, a plaintiff has the initial burden to establish that 1) he belongs to a protected class; 2) he applied for and was qualified for the position sought; 3) he was rejected; and 4) the employer granted the promotion to someone outside of the protected group who was not better qualified than the plaintiff. *Grayson*, 317 F.3d at 748. Once the plaintiff satisfies that burden, the "employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *David*, 846 F.3d at 225.

The parties do not dispute that Tyburski has established the first and third elements. He is over the age of 40, and was not promoted to the Assistant Chief position. Def. Mem. Supp. at 7–8, ECF No. 40. Instead, the dispute centers around the second and fourth elements of a *prima facie* case.

### 1. Qualified for Promotion

The City argues that Tyburski has failed to establish the second element, that he was qualified for the promotion, because he did not pass Part 3 of the Assistant Chief exam. *Id.* at 8. The Court agrees. It is undisputed that Tyburski received a 42% on Part 3 and that the City required a 60% score on the verbal exam. Pl.'s Resp. Def.'s Mot. Summ. J. at 2; Def.'s LR 56.1(a)(3) Stmt. ¶ 15. The City is permitted to set the requisite qualifications for an employment position, and Tyburski failed to meet them. *See Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 621 (7th Cir. 2001) ("[W]hat the qualifications for a position are . . . is a business decision, one courts should not interfere with." (citation omitted)).

### 2. Similarly Situated Employees

The City also argues that Tyburski has failed to establish the fourth *McDonnell Douglas* element because more than half of the candidates that were promoted to the Assistant Chief position were over the age of 40 and because Tyburski has not adduced evidence that the City granted the promotion to younger individuals who were less qualified. Def.'s Mem. Supp. at 8.

The City has it half right. The mere fact that the City promoted several individuals who were over the age of 40 is not fatal to Tyburski's *prima facie* case. *See Kralman v. Ill. Dep't of Veterans' Affairs*, 23 F.3d 150, 155–56 (7th Cir. 1994) (stating that despite the fact that the person ultimately hired for the position was 46 and within the protected class himself, "the plaintiff, at age 71, was of an entirely different generation" and therefore plaintiff did satisfy the *prima facie* requirements under the ADEA).

But Tyburski is required to demonstrate the existence of at least one similarly-situated younger comparator who was promoted. *See Williams v. Office of Chief Judge of Cook Cty.*, 839 F.3d 617, 626–27 (7th Cir. 2016), *reh'g denied* (Nov. 30, 2016) (holding that a failure to identify a similarly-situated employee was "fatal" to plaintiff's discrimination claim). To satisfy this element, he "must identify at least one employee who is directly comparable to [him] in all material respects," *Perez v. Thorntons, Inc.*, 731 F.3d 699, 704 (7th Cir. 2013), considering "experience, education, and other qualifications," *David*, 846 F.3d at 225–26.

Here, Tyburski has not identified any comparable candidates who scored below the 60% stated minimum and were nonetheless promoted. *See Jones v. City of Springfield*, 554 F.3d 669, 671–72 (7th Cir. 2009) (finding that plaintiff was not similarly situated with an individual who ranked higher on the promotion eligibility list). For this reason, Tyburski has failed to demonstrate under *McDonnell Douglas* that the City denied him a promotion because of his age.

### 3. Pretext

Furthermore, even assuming, *arguendo*, that Tyburski could establish his *prima facie* case under the *McDonnell Douglas* framework, he cannot show that the City's proffered reason for not promoting him—that he failed the verbal exam—was pretextual. A plaintiff may show pretext by establishing that "(1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the failure to promote; or (3) the proffered reasons were insufficient to motivate the failure to promote." *Baron*, 195 F.3d at 341. To the extent that Tyburski

argues that his 42% verbal exam score was pretext for age discrimination, there is no evidence in the record to support his assertion.

First, Tyburski has not provided any evidence to show that the grading procedure was biased, or that McCarthy and Walsh gave him a failing score because of his age. Tyburski points to the fact that the files of the candidates identified their individual birth years, while redacting other personal information, as proof of age-motivated animus. Pl.'s Resp. Def.'s Mot. Summ. J. at 5. But even if McCarthy and Walsh were aware of his age (which is contested), "mere knowledge of an employee's age . . . does not evince pretext or discrimination." *Santangelo v. Crown Cork & Seal USA, Inc.*, 255 F. Supp. 3d 791, 810 (N.D. Ill. 2017); *see* Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt. ¶ 13.

Second, Tyburski points to Walsh's and McCarthy's inability to recall the contents of the verbal exam as proof that the interviewers asked candidates different questions based on their age. Pl.'s Resp. Def.'s Mot. Summ. J. at 2. Tyburski makes a similar suggestion that McCarthy's and Walsh's inability to recall the candidates' exam answers indicates that his score was factually baseless. *Id.* at 4. But there is no evidence in the record to support Tyburski's conjecture that the questions were not standardized, much less that McCarthy and Walsh improperly assigned Tyburski a failing score. While the Court must draw inferences in favor of Tyburski as the nonmoving party, this "does not extend to drawing inferences that are supported only by speculation or conjecture." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012).

Third, Tyburski argues that he should have received full credit on the verbal-exam question pertaining to centrifugal pumps. Pl.'s Resp. Def.'s Mot. Summ. J. at 6–7; *see* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 30–32. Although the grading of the verbal exam may be somewhat subjective, the "use of a subjective, even arbitrary, selection process is not proof of discrimination," *Diettrich v. Northwest Airlines, Inc.*, 168 F.3d 961, 966 (7th Cir. 1999), and employers may even "err in evaluating employees' strengths," but "unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter," *Baron*, 195 F.3d at 341 (7th Cir. 1999) (citation omitted). *See also McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992) (citation omitted) (stating that the Court does "not sit as a super-personnel department that reexamines an entity's business decisions"). Here, it suffices to say that, even if Tyburski had received a full score on the centrifugal-pump question, he still would not have met the 60% passing rate. *See* Def.'s Reply Supp. at 3–4, ECF No. 54. Moreover, Tyburski has not adduced evidence that his scores were improperly manipulated.

Fourth, Tyburski argues that EEO Investigator Skopis's inability to recall the outcome of the internal investigation into Tyburski's charge is evidence of pretext. Pl.'s Resp. Def.'s Mot. Summ. J. at 7. But Tyburski does not explain how this proves that the proffered reason for denying the promotion was false. *See Baron*, 195 F.3d at 341 ("This Court has previously defined 'pretext' as a lie or a phony reason for an employment decision."); *see also Brown*, 700 F.3d at 1104 (stating that the Court will not draw inferences that are "supported only by speculation or conjecture").

Finally, Tyburski asserts that his own review of candidate files demonstrates that he is more qualified than other candidates for the Assistant Chief position. Pl.'s Resp. Def.'s Mot. Summ. J. at 7; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 34. But "an employee's own subjective belief that [he] is as qualified or more qualified than another applicant is insufficient," and therefore, is not itself evidence of pretext. *Hall v. Forest River, Inc.*, 536 F.3d 615, 620 (7th Cir. 2008).

In sum, the City has provided a nondiscriminatory reason for not promoting Tyburski: He did not pass Part 3 of the Assistant Chief Exam. Def.'s Mem. Supp. at 7–8. Contrary to Tyburski's contentions, there is no evidence in the record that the City failed to promote Tyburski because of his age, rather than his exam score. Thus, no reasonable jury could conclude that the City's stated reasons were pretextual.

## B. Evaluating the Evidence as a Whole Under *Ortiz*

Under *Ortiz,* Tyburski may yet survive summary judgment if the evidence, viewed as a whole, permits a reasonable fact finder to conclude that his age was the cause of the failure to promote. *Lauth*, 863 F.3d at 715; *Ortiz*, 834 F.3d at 765.

Here, the evidence viewed as a whole indicates that Tyburski's failure on the verbal portion of the Assistant Chief Exam is what disqualified him from promotion. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 15–17. Tyburski attempts to create a genuine issue of material fact, advancing the same arguments discussed above. But even when viewing this evidence cumulatively, the Court concludes that no reasonable jury could find that Tyburski's age was the but-for reason that he was not promoted. For the foregoing reasons, the City's motion for summary judgment on Tyburski's failure to promote claim is granted.

## II.     Retaliation Claim

Tyburski next alleges that the City retaliated against him for filing internal grievances and EEOC complaints.  Compl. ¶ 20.  The ADEA prohibits an employer from retaliating against an employee for complaining about age discrimination.  29 U.S.C. § 623(d).  To survive summary judgment on his ADEA retaliation claim, Tyburski must establish that "(1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lauth*, 863 F.3d at 716.  Tyburski first offers his denied promotion as evidence of retaliation, and then asserts various incidents of age harassment as evidence of retaliation.

### A.     Failure to Promote as Evidence of Retaliation

Tyburski alleges that he was denied the promotion to the Assistant Chief position in retaliation for verbal complaints he made in 2013 and 2014 to Andre Holland, the Chief Operating Engineer at Central Park, about Brian Sumner's age-related comments.  Compl. ¶ 15; Def.'s LR 56.1(a)(3) Stmt. ¶¶ 32–33.  The City argues that there is no evidence of a causal connection between Tyburski's complaints and the denial of a promotion.  Def.'s Mem. Supp. at 10.

To that point, Tyburski has cited no evidence that McCarthy or Walsh were aware of Tyburski's internal complaints to Holland when they conducted Part 3 of the Assistant Chief Exam.  "[A] superior cannot retaliate against an employee for protected activity about which he has no knowledge." *Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009).  In fact, neither McCarthy nor Walsh had met Tyburski before the verbal exam. Viewing the evidence in Tyburski's favor, McCarthy and

Walsh knew, at most, that he was an "older gentleman," but nothing more.  Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt. ¶ 13.  Tyburski thus has not adduced sufficient evidence of causation to survive a motion for summary judgment with regard to this retaliation theory.

Tyburski also ruminates that whoever it was that formally denied him a promotion (Tyburski does not know who it was) may have done so in retaliation.  Pl.'s Resp. Def.'s Mot. Summ. J. at 8.  But, again, speculation is not evidence.  *See Brown*, 700 F.3d at 1104.

Moreover, even if McCarthy, Walsh, or an unknown decision-maker, was aware of Tyburski's complaints to Holland, mere knowledge of protected activity is insufficient to show causation: "retaliation must be a but-for cause of a materially adverse action, not merely a contributing factor."  *Barton v. Zimmer, Inc.*, 662 F.3d 448, 455 (7th Cir. 2011).  As discussed above, Tyburski has not rebutted the City's evidence that he was denied a promotion because he failed to meet the 60% pass rate for Part 3 of the Assistant Chief Exam, and therefore, no reasonable jury could conclude that retaliation was the "but-for cause" of Tyburski's denied promotion.  *Id.* at 455.

### B. Workplace Age Harassment as Evidence of Retaliation

Tyburski also describes multiple instances when he was subjected to age-based harassment in the workplace in retaliation for filing internal grievances and EEOC charges.  Compl. ¶¶ 16–17.  According to Tyburski, he filed a written grievance with the City in October 2014 pertaining to his denied promotion to the Assistant Chief

position and three charges with the EEOC in April 2015, July 2015, and August 2015.[11] *Id.*; Def.'s LR 56.1(a)(3) Stmt. ¶¶ 18, 48–49, 52.

As a preliminary matter, Tyburski's internal grievance is not protected activity because it did not complain about age discrimination. *See Ferguson v. Exelon Nuclear*, No. 10 C 113, 2011 WL 1231600, at *5 (N.D. Ill. Mar. 30, 2011) (granting summary judgment on retaliation claim because the plaintiff's internal grievance did not complain about age discrimination). Rather, Tyburski complained in the grievance that the City promoted an engineer with lesser rank and lesser seniority and requested that the City reconsider Tyburski's application for the position. Def.'s LR 56.1(a)(3) Stmt. ¶ 18. *See Skiba*, 884 F.3d at 721 (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993)) ("The Supreme Court has stated that age and years of service are analytically distinct.").

On the other hand, Tyburski's three EEOC charges in 2015 are protected activity because they complained about age discrimination, and he contends that, in retaliation for these charges, he was both assaulted by Sumner and assigned menial cleaning tasks[12] that were outside his job description.[13] Def.'s LR 56.1(a)(3) Stmt.

---

[11]   The EEOC charge filed on August 19, 2015, was never signed by Tyburski. Def.'s LR 56.1(a)(3) Stmt. ¶ 52.

[12]   It is unclear from the Complaint whether Tyburski is referring to the assignment to clean the garage floor or the assignment to conduct boiler water tests. Compl. ¶ 17. The Court assumes that Tyburski means the garage assignment because that assignment occurred after he began filing EEOC complaints, and because Tyburski's third EEOC Charge, filed in August 2015, identified the retaliatory menial assignments as sweeping and mopping the garage floor. *See* Def.'s LR 56.1(a)(3) Stmt., Ex. K, EEOC Charge of Discrimination at TYB.DEF005111, ECF No. 41-12.

[13]   Tyburski also alleges that he was assigned to a less favorable work location in June 2015 as retaliation, but this allegation finds no support in the evidentiary record. Compl.

¶¶ 34, 50.  But as for Sumner, there is nothing in the record that indicates that he knew about Tyburski's EEOC charges.  Def.'s LR 56.1(a)(3) Stmt. ¶¶ 34, 54.  Moreover, Tyburski has not cited to any evidence that Mecher, the person who assigned Tyburski the task of cleaning the garage floor, was aware of Tyburski's EEOC charges either.  Def.'s LR 56.1(a)(3) Stmt. ¶ 54.  Thus, no reasonable jury could conclude that Tyburski's EEOC complaints were a "but-for cause" of either alleged adverse action.  *See Kuhn v. United Airlines, Inc.*, 640 F. App'x 534, 539 (7th Cir. 2016) ("At a minimum, a causal connection requires that the relevant decision-makers were aware of the protected activity at the time they took the adverse action.").  The Court therefore grants the City summary judgment on Tyburski's retaliation claim.

## III.  Hostile Work Environment

Tyburski also brings an age-based hostile work environment claim based on the City's purported failure to redress various instances of alleged age harassment.  Compl. ¶ 20.  The Seventh Circuit has "assumed without deciding that plaintiffs may bring a claim of a hostile work environment under the ADEA." *Fugate v. Dolgencorp, LLC*, 555 F. App'x 600, 603 n.1 (7th Cir. 2014); *see also Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005).  A hostile work environment qualifies as an

---

¶ 17.  It is undisputed that Tyburski worked at Central Park pumping station through September 8, 2015.  Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt. ¶ 20.  It is also undisputed that Tyburski was reassigned from Central Park to Jardine in September 2015 after Tyburski swung a wrench at a steel bench.  *Id.* ¶¶ 60–61.  There is nothing in the record indicating that Tyburski received a location assignment during June 2015, and, in fact, Tyburski states in his deposition that he was not ultimately transferred in June 2015.  Tyburski Dep. at 122:15–123:7.

adverse employment action under the ADEA where harassment-mistreatment of an employee by his or her coworkers or supervisors is severe enough that it substantially worsens the employee's conditions of employment, as would be perceived by a reasonable person in the position of the employee." *Galvan v. Cmty. Unit Sch. Dist. No. #300*, 46 F. Supp. 3d 836, 842 (N.D. Ill. 2014) (citing *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002)).

To survive summary judgment on this claim, Tyburski must "provide sufficient evidence that (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on his age; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Crum v. Advocate N. Side Health Network*, No. 16 CV 8951, 2018 WL 1064990, at *12 (N.D. Ill. Feb. 26, 2018) (citing *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016)).

As a threshold matter, the City maintains that the Court may not consider Tyburski's treatment at Jardine, because Tyburski did not file an EEOC charge as to his hostile work environment claim, thereby failing to exhaust his administrative remedies. Def.'s Mem. Supp. at 13. And, as to the incidents at Central Park, the City argues that summary judgment is appropriate for several reasons. First, it argues that the incidents were not severe and pervasive and that most are unconnected to age. *Id.* at 11. Second, it contends that there is no basis for employer liability because the conduct did not involve individuals with the ability to affect the terms and conditions of Tyburski's employment.[14] *Id.* at 12.

---

[14]     The City further asserts that Tyburski has failed to demonstrate that he is entitled to compensatory damages, which are the only damages available for hostile work environment

## A.    Administrative Exhaustion

Before addressing the merits of Tyburski's hostile work environment claim, the Court considers whether Tyburski exhausted his administrative remedies. To do so, the Court considers: (a) whether "the allegations [in the instant lawsuit] are like or reasonably related to those contained in the EEOC complaint;" and (b) "whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). "Claims are reasonably related if there is a factual relationship between them," and at a minimum, the "EEOC charge and the complaint must describe the same conduct and implicate the same individuals." *Id.* (citing *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001)). The purpose of this requirement is to "give[ ] the employer some warning of the conduct about which the employee is aggrieved and afford[ ] the EEOC and the employer an opportunity to attempt conciliation without resort to the courts." *Ezell*, 400 F.3d at 1046.

Tyburski's hostile work environment claims related to incidents at the Jardine facility include allegations that he was denied a chair at his station, refused training, subjected to age-related comments, assigned to menial cleaning tasks outside of his normal job duties, and assigned to work in cold and polluted rooms. He also claims that his name was removed from time sheets and that his engineer's license was moved to a lower tier on a wall. Pl.'s Resp. Def.'s Mot. Summ. J. at 9–10. According

---

claims under the ADEA. Def.'s Mem. Supp. at 10–11; Def.'s Reply Supp. at 10. Because the Court grants summary judgment to the City on other grounds, the Court does not address this argument.

to Tyburski, all of the incidents took place after September 2015.  Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt. ¶ 60–61.

By contrast, Tyburski's EEOC complaints involved incidents at the Central Park facility, including his denial of promotion to Assistant Chief, being the subject of discriminatory comments and physical intimidation from Sumner, temporary reassignment to an undesirable location, and being ordered by Mecher to sweep and clean the garage floor at Central Park.  *See* Def.'s LR 56.1(a)(3) Stmt., Ex. K, EEOC Charge of Discrimination at TYB.DEF004793, TYB.DEF004960, TYB.DEF005111, ECF No. 41-12.  The EEOC charges also name Mark O'Malley, who Tyburski believed encouraged Sumner to harass Tyburski.  *Id.* at TYB.DEF004960. Even a cursory review of the EEOC charges reveal that Tyburski's allegations pertaining to Jardine involve an entirely separate set of incidents and people than those identified in his EEOC charges.  Accordingly, the Court holds that Tyburski did not exhaust his administrative remedies with respect to his hostile work environment claim involving the Jardine facility.  *See Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726–27 (7th Cir. 2003) (declining to link claims where they involved "a separate set of incidents, conduct, and people" and spanned a different time period).

## B.    Conduct at Central Park

Turning to Tyburski's claim of hostile work environment at the Central Park facility, the Court must "consider the entire context of the workplace, not the discrete acts of individual employees," because "it is the employer's liability that is at issue, not liability of particular employees."  *Vance v. Ball State Univ.*, 646 F.3d 461, 470–71 (7th Cir. 2011), *aff'd*, 570 U.S. 421 (2013) (citation omitted).  To determine whether

an environment is sufficiently hostile and offensive to sustain a hostile work environment claim, the Court must examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.". *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998); *see also Bennington v. Caterpillar Inc.*, 275 F.3d 654, 660 (7th Cir. 2001). "Offhand comments, isolated incidents, and simple teasing do not . . . alter[ ] the terms and conditions of employment." *Passananti v. Cook Cty.*, 689 F.3d 655, 667 (7th Cir. 2012).

The parties disagree as to whether the conditions at Central Park were sufficiently severe or pervasive to constitute a hostile work environment. But the Court need not reach that question because, even if they were, there is no basis for employer liability based upon the present record.

First, it must be noted that Tyburski did not respond to the City's argument as to the absence of employer liability and, therefore, has forfeited any argument to support his employer liability claim. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (applying a forfeiture rule "where a litigant effectively abandons the litigation by not responding to alleged deficiencies"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

Second, such a claim would fail on the merits in any event. An employer "may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim," such as "hiring, firing, failing to promote, reassignment with significantly

27

different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013). Alternatively, "[i]f the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Id.* at 424; *see also Galvan*, 46 F. Supp. 3d at 843 (applying hostile work environment standard in *Vance* to ADEA claim). Moreover, once an employer is made aware of harassment in the workplace, "the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Vance*, 646 F.3d at 471.

Tybuski points to evidence that Sumner "yanked" him on one occasion and said age-based comments as much as once per week; Sanderson called Tyburski "old" and a "piece of shit;" and Mecher assigned him the menial tasks of conducting boiler water tests and cleaning the garage floor. Pl.'s Resp. Def.'s Mot. Summ. J. at 9; Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 27–30, 32–34, 38, 45–47, 50. Another co-worker, Worden, called Tyburski "too old" and stated that Tyburski did not know what he was doing. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 42–43.

But none of Tyburski's alleged harassers at Central Park was empowered to take tangible employment actions against him. Sumner, a Group A Engineer, Sanderson, a Group C Engineer, and Worden, also a Group C Engineer, all worked at the same level or below Tyburski, and none had the authority to discipline, fire, demote, or reassign Tyburski. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 25, 33, 36, 40. As for Mecher, even if his assignments to Tyburski were motivated by age (which is not

supported by the record), Mecher is an Assistant Chief who also lacked authority to hire, fire, demote or transfer Tyburski. *Id.* ¶ 22.

Nor is there any evidence to believe that the City was negligent in "failing to take reasonable steps to discover and remedy the harassment." *Vance*, 646 F.3d at 471 (7th Cir. 2011); *see also Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir. 2004) (stating that an employer's response need only be reasonable under the circumstances, and courts "are not to focus solely upon whether the remedial activity ultimately succeeded"). Tyburski complained to Andre Holland, a Chief Operating Engineer, about Sumner's conduct, and after each complaint, Holland responded promptly and took action such that Sumner's comments would cease for a week or two. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 32–33. Moreover, Holland took permanent corrective action by ordering that Sumner would be relegated to a position junior to Tyburski whenever the two worked on the same shift. *Id.*

Tyburski also filed internal complaints with Alex Skopis, the City's EEO Investigator, complaining of age-based harassment by Sanderson and Mecher and his promotion denial. Def.'s Resp. Pl.'s 56.1(b)(3)(C) Stmt. ¶¶ 21, 23, 26, 28; Tyburski Dep. at 168:12–169:14. Skopis investigated these allegations and ultimately did not sustain Tyburski's complaint. Def.'s Resp. Pl.'s 56.1(b)(3)(C) Stmt. ¶¶ 23, 28; Tyburski Dep. at 168:12–169:14. While Skopis does not recall the details of his investigation, Tyburski has not adduced any evidence to question to integrity of this investigative process. Accordingly, Tyburski has failed to provide any facts to support his theory that the City was negligent in responding to his complaints of harassment. *See Vance*, 646 F.3d at 471 (finding that an employer satisfied its obligation by

"promptly investigating each of [the plaintiff's] complaints and taking disciplinary action when appropriate").

For these reasons, the Court grants the City's motion for summary judgment as to Tyburski's hostile work environment claim.

## Conclusion

For the reasons stated herein, Defendant's motion for summary judgment [39] is granted.  Judgment is entered in favor of the Defendant.


**IT IS SO ORDERED.**                    **ENTERED**    8/20/18


_____
**John Z. Lee**
**United States District Judge**